Steven Phillips v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-452-CR

STEVEN PHILLIPS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

------------

OPINION

------------

I.  Introduction

A jury convicted Appellant Steven Phillips of capital murder, and the trial court sentenced him to life imprisonment.  In two points on appeal, Phillips contends that the trial court erred by denying his motion to suppress because  (1) his oral statements and all other evidence obtained therefrom were the direct result of an illegal arrest, and (2) his confession was obtained involuntarily after law enforcement made promises to induce him to confess. We will affirm.

II.  Factual and Procedural Background

For approximately five months, Phillips lived in a trailer in Cooke County with his girlfriend, Cheri Mahurin, and her eight-year-old son, Morgan.  On Tuesday, October 2, 2001, Cheri drove to Pennsylvania to attend her grandfather’s funeral, leaving Phillips in charge of Morgan until Friday when her sister was to pick up Morgan from school.  On the evening of October 4, 2001, after consuming several beers, Phillips awoke Morgan and drove him to a remote rural location known as Cooper’s Crossing.  Shortly after arriving at the location, Phillips instructed Morgan to take off all his clothes and either sexually assaulted or attempted to sexually assault the boy.  Thereafter, in order to prevent Morgan from telling anyone what had transpired, Phillips choked and drowned Morgan in a creek at Cooper’s Crossing.  Phillips then left Morgan’s nude body floating in the creek and returned home.

The following morning, in an attempt to cover up Morgan’s murder, Phillips went to Morgan’s school and told school officials that Morgan had forgotten his backpack that morning.  After school officials made several attempts to locate Morgan, Patti Mercer, the principal at Morgan’s elementary school, called the police to report Morgan missing.  Thereafter, Deputy Laren Hudson, a Cooke County Sheriff’s Deputy, arrived at the school and briefly questioned Phillips about when he last saw Morgan.  Phillips maintained that he woke Morgan for school at 6:05 a.m. that morning and then went back to bed. Phillips then agreed to ride with Deputy Hudson back to his residence to look for Morgan.  Shortly thereafter, a team of sheriff’s deputies and search dogs began searching the area around Phillips’s residence.  Throughout the afternoon, Phillips walked around the yard area, talked with family members, and answered questions from various law enforcement officials.  Phillips also sat in law enforcement vehicles at various times throughout the day to stay warm; however, he was never forced to do so or restrained in any way. Later in the afternoon, at approximately 4:30 p.m., Phillips voluntarily accompanied Investigator Jimmy Burke and Investigator Brent Mast in a law enforcement vehicle to the Cooke County Sheriff’s Department to file a missing persons report and to give a statement.  According to Investigator Burke, Phillips was not forced to go to the department, he was not in custody or restrained, and he did not request to drive his own vehicle. 

After arriving at the department, Phillips was left unattended in the front lobby while the investigators returned phone calls in their respective offices. During this time, Phillips was free to move around, to use the lobby phone, or to leave the premises.  Approximately one hour after arriving at the sheriff’s department, Phillips signed an “Acknowledgment of Not Under Arrest,” recognizing that he understood that he was not in custody and was free to leave at any time.  Thereafter, in a recorded statement beginning at approximately 5:30 p.m., Phillips denied any knowledge as to Morgan’s whereabouts, once again claiming that he had not seen Morgan since waking him up for school that morning.  After questioning Phillips for approximately one hour, the investigators decided to end the interview for a brief period of time to allow Phillips to get a drink or use the restroom.

Phillips subsequently waited in the lobby of the sheriff’s department for approximately an hour-and-a-half while both investigators returned several phone calls.  Once again, Phillips was left in the front lobby of the sheriff’s department for an extended period of time, during which he was unrestrained and unguarded.

At approximately 8:10 p.m., the investigators began taking a second recorded statement from Phillips.  
A
t the commencement of this statement, Phillips again acknowledged that he understood that he was not under arrest and that he was giving the statement voluntarily.  Approximately forty minutes into the second statement, Phillips requested a bathroom break.  During the break, as Investigator Mast escorted him back from the  restroom area,
(footnote: 1) Phillips indicated to Investigator Mast that he knew where Morgan was and would take them to him.  According to Investigator Mast, prior to this incriminating statement, Phillips was free to terminate the interrogation or to leave the sheriff’s department at any time because there was no probable cause to arrest him.  However, as a result of this statement, Mast considered Phillips as “in custody,” and therefore, he was no longer free to leave the premises.

Immediately thereafter, at approximately 8:55 p.m., Investigator Burke informed Phillips that he was under investigation for Morgan’s disappearance and advised Phillips of his 
Miranda
(footnote: 2) rights.  Phillips then indicated that he understood his rights and was knowingly and voluntarily waiving them.  As a result, the investigators resumed Phillips’s second statement, wherein he confessed to murdering Morgan and leaving Morgan’s body in the creek at Cooper’s Crossing.

At the conclusion of Phillips’s second statement, Investigator Burke, Investigator Mast, Phillips, and several other law enforcement officials traveled to Cooper’s Crossing to locate Morgan.
(footnote: 3)  After arriving at the scene, Phillips was again advised of his rights and agreed to waive them.  Then, in a third recorded statement, Phillips was videotaped leading Investigator Mast through the crime scene to Morgan’s body.  Immediately after Morgan’s body was located, an arrest warrant was executed for Phillips, and he was transported to jail.

On October 7, 2001, Investigator Mast took a fourth recorded statement from Phillips.  After waiving his rights, Phillips discussed various details regarding Morgan’s murder, including admitting that he originally took Morgan to Cooper’s Crossing with the intent to sexually assault him.  Phillips also admitted that he had been having sexual thoughts about Morgan for approximately four months prior to the murder and that he had recently cut out a peephole between the bathroom and the bedroom in his residence in order to watch Morgan bathe.

On March 22, 2002, Phillips filed a motion to suppress, alleging that his statements and all the evidence derived from his statements were obtained 
as the result of an illegal arrest in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; article I, sections 9 and 10 of the Texas Constitution; and articles 14.03, 14.04, 38.22, and 38.23 of the Texas Code of Criminal Procedure.
(footnote: 4)  On October 4, 2002, after hearing argument and evidence from both sides, the trial court denied Phillips’s motion to suppress.  Thereafter, the trial court issued findings of fact and conclusions of law finding and concluding as a matter of law that (1) Phillips was not in custody until 8:55 p.m., wherein his rights were read to him and he was informed that he was under investigation for Morgan’s disappearance; and (2) each of Phillips’s oral statements was freely and voluntarily made with a sufficient understanding and waiver of his right against self-incrimination and without any compulsion or improper persuasion.  As a result, during the trial on the merits, the State introduced Phillips’s oral statements and evidence derived therefrom into evidence, despite Phillips’s objections.  On November 7, 2002, after considering all of the evidence and testimony presented, the jury found Phillips guilty of capital murder, and the trial court sentenced him to a mandatory life sentence.  This appeal followed.

III.  Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court's decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  At a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. 
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
Best
, 118 S.W.3d at 861-62.  However, we  review de novo a trial court’s rulings on mixed questions of law and fact if they do not turn on the credibility and demeanor of witnesses.  
Johnson
, 68 S.W.3d at 652. 

IV.  Illegal Arrest

In his first point, Phillips contends that the trial court erred by denying his motion to suppress because his statements and all the evidence derived based upon his statements were obtained as the direct result of an illegal arrest. Specifically, Phillips complains that, because of the length his interrogation, the continual questioning, and the nature of his contact with law enforcement, beginning after he was transported to his residence by Deputy Hudson, he was unlawfully taken into “custody” at some time prior to being transported to the sheriff’s department by Investigators Burke and Mast.
(footnote: 5)  Thus, he maintains that, given the circumstances leading up to his interrogation, a reasonable person would have believed that he was in custody because his freedom of movement was significantly restricted, and as a result, his statements and all the evidence obtained therefrom should have been suppressed.  The State, however, maintains that Phillips was not taken into custody until 8:55 p.m. when he told Investigator Mast that he would take him to Morgan, at which point he was immediately advised that he was under investigation for Morgan’s disappearance, he was informed of his rights, and he indicated that he was knowingly and voluntarily waiving those rights.  Therefore, the State contends that the trial court did not abuse its discretion in admitting his statements and the resulting evidence because they were lawfully obtained.

Pursuant to article 15.22 of the Texas Code of Criminal Procedure, “[a] person is arrested when he has been actually placed under restraint or taken into custody by an officer . . . .”  
Tex. Code Crim. Proc. Ann.
 art. 15.22 (Vernon 1977).  A person is in “custody” only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. 
 Dowthitt v. State
, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996); 
Cagle v. State
, 23 S.W.3d 590, 592 (Tex. App.—Fort Worth 2000, pet. ref’d) (op. on reh’g).  The reasonable person standard presupposes an innocent person.  
Dowthitt
, 931 S.W.2d at 254.

The Texas Court of Criminal Appeals articulated four general situations that may constitute custody:  

(1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.  

Id.
 at 255.  
With regard to the first through third situations, the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to merely an investigative detention.  
Id. 
In the fourth situation, the officers' knowledge of probable cause must be manifested to the suspect.  
Id.  
Such manifestation results when information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers.  
Id.
  Situation four, however, does not automatically establish custody; rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe he or she is under restraint to the degree associated with an arrest.  
Id.

The determination of custody must be made on an ad hoc basis, after considering all of the circumstances.  
Shiflet v. State
, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985).  Stationhouse questioning does not, in and of itself, constitute custody.  
Dowthitt
, 931 S.W.2d at 255.  However, the mere fact that an interrogation begins as non-custodial does not prevent custody from arising at some later point in time.  
Id
.  Specifically, police conduct during the encounter may cause a consensual inquiry to escalate into a custodial interrogation.  
Id
.  

In addition, because the determination of custody depends on the objective circumstances of the interrogation, the subjective views harbored by either the interrogating officers or by the person being questioned are not controlling.  
Stansbury v. California
, 511 U.S. 318, 323, 114 S. Ct. 1526, 1529 (1994).  In determining when custody attaches, courts may consider whether the suspect voluntarily arrived at the place of interrogation, the length of the interrogation, whether the suspect's requests to see relatives and friends are refused, and the degree of control exercised over the suspect.  
Xu v. State
, 100 S.W.3d 408, 413 (Tex. App.—San Antonio 2002, pet. filed); 
see also Dowthitt
, 931 S.W.2d at 255-57.  As a general rule, when a person voluntarily accompanies law enforcement to a certain location, even though he knows or should know that law enforcement suspects that he may have committed or may be implicated in committing a crime, that person is not restrained or “in custody.”
 Livingston v. State
, 739 S.W.2d 311, 327
, 
(Tex. Crim. App. 1987),
 cert. denied
, 487 U.S. 1210 (1988).  More specifically, so long as the circumstances show that he is acting only upon the invitation, request, or even urging of law enforcement, and there are no threats, either express or implied, that he will be taken forcibly, the accompaniment is voluntary, and such person is not in custody.
 
 
Anderson v. State, 
932 S.W.2d 502, 505 (Tex. Crim. App.1996), 
cert. denied
, 521 U.S. 1122 (1997);
 Dancy v. State
, 728 S.W.2d 772, 778 (Tex. Crim. App.), 
cert. denied
, 484 U.S. 975 (1987); 
Shiflet
, 732 S.W.2d at 628.

In the instant case, in order to determine whether Phillips was subject to an illegal arrest, we must first determine if Phillips was actually “arrested” at any point prior to incriminating himself at 8:55 p.m.  
See Chambers v. State
, 866 S.W.2d 9, 19 (Tex. Crim. App. 1993), 
cert. denied
, 511 U.S. 1100 (1994).  Because the issue of custody is a mixed question of law and fact, we will review de novo the trial court’s determination that Phillips was not in custody at any time prior to 8:55 p.m. 
Jeffley v. State
, 38 S.W.3d 847, 853 (Tex. App.—Houston [14
th
 Dist.] 2001, pet. ref'd).

In considering the totality of the circumstances leading up to the interrogation, several factors tend to show that Phillips was not in custody until he incriminated himself at 8:55 p.m.  The record reveals that Phillips initially came in contact with the police only after taking Morgan’s backpack to school in an effort to divert attention from himself before authorities realized that Morgan was missing.  Thereafter, Phillips voluntarily agreed to assist law enforcement in searching for Morgan.  During the period of time at his residence, Phillips was questioned by various officers in an attempt to gain information about Morgan and his potential whereabouts because Phillips was one of Morgan’s caretakers and the last person in contact with the child before his disappearance.  From the viewpoint of an innocent person, such questioning would have appeared only investigatory, especially since law enforcement was unaware that a crime had actually been committed.  

In addition, while at his residence, Phillips was not restrained in any way or forbidden from leaving the premises.  In fact, according to both investigators, he was walking around and talking to friends and family.  The record also reflects that when Phillips rode to the sheriff’s department with the investigators, he did so voluntarily, unrestrained, and riding in the passenger seat of the vehicle.  Thereafter, on at least two occasions after arriving at the station, Phillips was left unattended for extended periods of time in the lobby, with access to a nearby telephone and exit.

Prior to beginning both the first and second statements, Phillips acknowledged, both orally and in written form, that he was not under arrest and that he was free to terminate the interview and leave the premises at any time if he so desired.  However, as evidenced by the record, Phillips never asked to terminate the interview, to leave the premises, or to speak to anyone. Moreover, the length of time that Phillips was actually being interviewed at the department before incriminating himself was less than two hours, and even so, Phillips was given restroom breaks as needed.  In addition, during the course of the questioning, Phillips had access to an unlocked door leading directly from the investigator’s office to the main lobby area.  The record also indicates that as soon as probable cause was established linking Phillips to Morgan’s disappearance, he was immediately told that he was under investigation and advised of his rights.  

In his brief, Phillips references several comments made by both investigators in support of his contention that he was in custody prior to incriminating himself.  However, after reviewing the complained-of comments in context with the entire interrogation, we are unpersuaded that based on those comments a reasonable person in Phillips’s situation would have felt that he or she was not at liberty to terminate the interrogation and leave, particularly in light of his multiple acknowledgments that he was not under arrest.

Therefore, after carefully considering all of the circumstances surrounding Phillips’s interrogation, we conclude that a reasonable person in Phillips’s situation would not feel restrained to the degree associated with a formal arrest.  As a result, we conclude that Phillips was not in custody at anytime prior to 8:55 p.m. when he incriminated himself in Morgan’s disappearance. Accordingly, because Phillips was never “arrested” prior to 8:55 p.m., the trial court did not abuse its discretion by failing to suppress his statements and the evidence obtained therefrom.  
See Dancy
, 728 S.W.2d at 778 (holding suspect not in custody until evidence linked the person to the offense);
 Turner v. State
, 685 S.W.2d 38, 43 (Tex. Crim. App. 1985) (holding suspect not in custody until law enforcement realized the likelihood of the person’s involvement in the offense).
 
 We overrule Phillips’s first point.

V.  Involuntary Confession

In his second point, Phillips contends that the trial court erred by denying his motion to suppress because his confession was obtained involuntarily after law enforcement made promises to induce him to confess.  In response, however, the State maintains that law enforcement never promised Phillips any immunity or benefit that would have induced him to confess falsely. 

Under Texas law, a suspect's confession may be used against him only when it is freely and voluntarily made without compulsion or persuasion.  
Tex. Code Crim. Proc. Ann
. art. 38.21 (Vernon Supp. 2004).  A statement is not voluntary if there was “official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker.”  
Alvarado v. State
, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).  The determination of the voluntariness of a confession depends on the totality of the circumstances surrounding the confession. 
 Penry v. State
, 903 S.W.2d 715, 748 (Tex. Crim. App.), 
cert. denied
, 516 U.S. 977 (1995).  

Law enforcement personnel may not elicit confessions by making false promises.  
See
 
Lynumn v. Illinois
, 372 U.S. 528, 534, 83 S. Ct. 917, 920 (1963).  However, before such a promise will render a confession inadmissible, the promise must be shown to have induced the confession.
  See
 
Muniz v. State
, 851 S.W.2d 238, 254 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 837 (1993).  A promise will render a confession involuntary only if it is (1) positive; (2) of some benefit to the suspect; (3) made or sanctioned by someone in authority; and (4) of such an influential nature that a defendant would speak untruthfully in response thereto. 
 Creager v. State
, 952 S.W.2d 852, 856 (Tex. Crim. App.1997).  Moreover, an improper inducement must be of an exceptional character before it will invalidate an otherwise voluntary confession.  
Espinosa v. State
, 899 S.W.2d 359, 364 (Tex. App.—Houston [14
th
 Dist.] 1995, pet. ref'd).

In the instant case, Phillips points to the following statements by Investigator Mast as evidence that the investigators made false promises in order to induce him to confess:

If you went somewhere and left the kid there for a little bit by hi[m]self, I’m not going to arrest you for that.  I’m not going to call  Child Protective Services for that. . . .  If you went and bought dope, I don’t care. . . .  We don’t care if you’re cheating on your wife, if you’re doing dope . . . if you’re burglarizing stuff right now.  We don’t care, see.  What we care about is Morgan’s safety.

Our review of the record reveals that at the time these statements were made there was no evidence that any crime had been committed.  However, based on several inconsistencies in Phillips’s earlier recitation of Morgan’s disappearance, coupled with conflicting witness information, the investigators had reason to believe that Phillips was being untruthful about his whereabouts and activity the previous evening.  Consequently, Investigator Mast was attempting to persuade Phillips to tell the truth about what he had done the previous night in order to assist them in locating Morgan.  Nothing in these statements suggests that Phillips would be given any leniency for confessing, even falsely, to Morgan’s murder.  
See Janecka v. State
, 937 S.W.2d 456, 466 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 825 (1997).

In addition, in support of his contention that the investigators made promises in order to induce him to confess, Phillips also references Investigator Mast’s statements, “[b]ecause we’re not trying to get you in trouble. . . . Because we’re here to help you.  And you--you’re the guy who can help.” Specifically, he complains that these statements “unequivocally promised [him] he would not be harmed, but in fact helped, if he confessed.”

However, as a general rule, non-specific offers to “help” a defendant will not render a confession invalid. 
 
See Dykes v. State
, 657 S.W.2d 796, 797 (Tex. Crim. App. 1983).  In the instant case, neither investigator specifically promised Phillips that he would be “helped” in any way by confessing to Morgan’s murder.  
See Garcia v. State
, 919 S.W.2d 370, 388 (Tex. Crim. App. 1994) (op. on reh’g).  As a result, the aforementioned statements are not of such character that would likely influence Phillips to confess untruthfully.  
See id
.  Consequently, we overrule Phillips’s second point.

VI.  Conclusion

Having overruled all of Phillips’s points on appeal, we affirm the trial court’s judgment. 

SUE WALKER

JUSTICE

PANEL F: DAUPHINOT, HOLMAN, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: February 26, 2004

FOOTNOTES
1:
According to Investigator Burke, the restrooms were located behind a restricted access door in order to keep the general public from using the facilities.  As a result, Phillips had to be escorted to the restroom area by a person authorized to access the facilities.

2:
Miranda v. Arizona
, 384 U.S. 436, 86 S. Ct. 1602 (1966).

3:
According to Investigator Mast, it was necessary to take Phillips out to Cooper’s Crossing to locate the body because based on the nature of the area, a person “could walk past that body within ten or fifteen feet and not see it.”

4:
U.S. 
Const.
 amend. IV, V, XIV; 
Tex. Const.
 art. I, §§ 9,10; 
Tex. Code Crim. Proc. Ann.
 arts. 14.03, 14.04, 38.22, 38.23 (Vernon 1977 & Supp. 2004).

5:
On appeal, Phillips does not appear to challenge law enforcement’s right to arrest him after he told them that he would take them to Morgan.  
See 
Tex. Code Crim. Proc. Ann.
 art. 14.03(a)(4) (Vernon Supp. 2004) (permitting an officer to arrest without a warrant any person who the officer has probable cause to believe has committed an assault resulting in bodily injury to a member of the person's family or household).  Therefore, our inquiry will be limited to determining whether he was taken into custody without probable cause at any time prior to incriminating himself at 8:55 p.m.